**METRIC SYSTEMS
CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 647-87C.**

United States Claims Court.

Nov. 3, 1987.

Joseph T. Casey, Jr., Washington, D.C., for plaintiff. J. Rankin Tippins and Ronald S. Perlman, of counsel.

David B. Stinson, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant.

## ORDER

BRUGGINK, Judge.

Pending before the court in this pre-award bid protest action is Defendant's Motion For A Protective Order, filed on October 27, 1987. Oral argument was heard November 2, 1987. Based on a consideration of the parties' written and oral submissions, the court grants the motion in part and denies it in part.

On March 5, 1987, the Department of the Air Force issued Request for Proposal ("RFP") No. F04606-86-1307 soliciting offers for the manufacture of unmanned threat emitters ("UMTE's"). Metric Systems, Inc. ("Metric") responded with a timely proposal. Metric was notified by letter dated July 10, 1987 that it was unreasonable to expect that the proposal could be revised to be made suitable for award because it had "significant design flaws and omissions."

Metric filed its complaint and application for a temporary restraining order in this court[1] on October 14, 1987. The application was made moot by defendant's agreement to delay through November 17, 1987, issuance of an award.

Metric has served a discovery request upon the Government seeking the following:

1. All documents relating to the letter, dated July 10, 1987, informing plaintiff that its proposal was deemed to be outside the competitive range;

2. All other documents relating to the decision to exclude plaintiff from the competitive range;

3. All documents relating to the evaluation reports of plaintiff's proposal, including the evaluation reports themselves;

4. All documents relating to the clarification requests and deficiency reports, including the requests and reports themselves, for Metric's proposal;

5. All documents relating to the clarification requests and deficiency reports, including the requests and reports themselves, for the other offerors' proposals; and

6. All documents relating to the acquisition plan.

Defendant argues that the materials sought are protected either under the executive (deliberative process) privilege or as proprietary materials relating to other bidders. Defendant's motion exposes an inherent tension in the law. On the one hand Congress has given this court pre-contract award jurisdiction. 28 U.S.C. § 1491(a)(3) (1982). The court has authority to award "complete relief on any contract claim brought before the contract is awarded." Although the scope of review is exceedingly narrow, *see, e.g., Keco Indus. Inc. v. United States,* 192 Ct.Cl. 773, 784, 428 F.2d 1233, 1240 (1970) (arbitrary and capricious standard); *Drexel Heritage Furnishings, Inc. v. United States,* 7 Cl.Ct. 134, 142–43 (1984), for it to remain meaningful, there

must be some substance to the review. There must be a record upon which to evaluate the contracting officer's ("CO's") actions, tested against whatever he or she is required by law to do, or not do, within a wide discretion. On the other hand, the Government, within the reasonable exercise of its discretion, has adopted a regulation that provides in substance that a bidder with no chance of obtaining the award is only entitled to a general explanation of defects in its proposal. 48 C.F.R. § 15.-1001(b) (1986). It is only entitled to a full debriefing *after* award. *Id.* § 15.1003. Moreover, 48 C.F.R. § 15.413–1(b) (1986) prevents an agency from furnishing information "to a prospective contractor if, alone or together with other information, it may afford the prospective contractor an advantage over others."

The conflict between the court's authority, indeed its duty, to exercise pre-award injunctive jurisdiction and the Government's desire to maintain the efficiency and integrity of the bid award process is brought into sharp relief by defendant's motion. Metric argues that it cannot prosecute the trial to which it is entitled without adequate information. Defendant argues that release of the information sought would be tantamount to circumvention of the procedure that permits debriefing only after award, and, to the extent that the information sought goes beyond what a bidder within the competitive range would receive, it might violate the Government's interest in protecting the deliberative process and the proprietary interest of other bidders.

Arguments that support disclosure are numerous. First, to obtain injunctive relief, the unsuccessful bidder must show entitlement "by clear and convincing evidence." *Isometrics, Inc. v. United States,* 5 Cl.Ct. 420, 422 (1984); *Baird Corp. v. United States,* 1 Cl.Ct. 662 (1983). If the court is isolated from the documents most relevant to the reasons why Metric was excluded from the competitive range, it is

---

1. Plaintiff had previously sought injunctive relief in the District Court for the Northern District of Florida. *Metric Systems Corp. v. United* States, No. 87–30280/WEA (N.D.Fla. filed July 30, 1987). The action was transferred to this court.

not difficult to conjecture that proof becomes highly problematic for Metric.

Moreover, as defendant's counsel admitted during oral argument, it is difficult to conceive of a trial on whether the CO's decision to exclude Metric's proposal was arbitrary or capricious which does not focus on substantive reasons why Metric's proposal had "significant design flaws and omissions." One factor unique to this action becomes highly relevant on this point. Among the appendices to Metric's filings thus far are two affidavits. One is by its President, Coy Scribner. He recites that Metric won a competitive Navy contract in 1980 for delivery of a modular UMTE, and that it has been awarded two additional contracts for eight units. He further states that the Air Force relied on information in Metric's Operation and Maintenance Manual to develop the present specifications, and that Metric is the only offeror to have successfully produced a UMTE. The second affidavit is that of Jefferson L. Severs, program manager for both the Navy UMTE and the present Air Force procurement, and technical evaluation team chief. Defendant originally filed this affidavit in the district court action in opposition to Metric's complaint for permanent and injunctive relief and specifically in response to the Scribner affidavit. In his affidavit, Severs recites that performance of the Navy UMTE "has been extremely poor." Yet he also states that "past experience was not an evaluation criteria. . . . [H]ad it been then Metric would have been seriously downgraded." He also implies that Metric's proposal was compared with other proposals in two respects. Metric argues that both reliance on previous performance and comparisons with other bidders were prejudicial regulatory violations.

Additionally, reliance on a post-award review may create a strong presumption that a successful challenger must be satisfied with bid preparation costs and a sense of moral victory—but no injunction. As a practical matter, setting aside an awarded contract is much more disruptive than reopening the bidding process to the challenger.

One final consideration must also be taken into account: the presumption created by RUSCC 26(b)(1) regarding the discoverability of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." As taught by the Supreme Court, "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947).

Other factors weigh against discovery, or suggest limited disclosure. Initially, as defendant argues, and as discussed in *CACI Field Services, Inc. v. United States,* 12 Cl.Ct. 440, 442–45 (1987), the Government has a legitimate interest in limiting disclosure of proprietary information between bidders. This argument relates to documents pertaining to other bidders. But it also militates against disclosing to Metric information beyond what other bidders would routinely receive if they were in the competitive range. If Metric were successful in this action and were introduced into the competitive range with greater knowledge than other bidders, the prejudice to the process would be obvious, and might adversely affect the type of relief it would receive if successful. This concern is somewhat allayed by Metric's offer to receive material subject to a protective order, but not totally. Clearly, if a bidder who did not make it into the competitive range could routinely get information otherwise precluded altogether, or else precluded by regulation until after award (albeit subject to nondisclosure), it would ultimately weaken the Government's ability to maintain the integrity and efficiency of the procurement process.

Defendant's second concern is expressed in terms of the executive privilege, asserted properly here by Edward C. Aldridge, Jr., Secretary of the Air Force. In the interest of expediting a decision on the substance of today's hearing, the court will not repeat its analysis in *CACI Field Services, Inc. v. United States,* 12 Cl.Ct. 680, 686–88 (1987). The court believes that analysis to be correct and largely applicable here. As a result, it is the court's contention that, insofar as relevant in this

context, the privilege applies to those materials and those deposition answers that reflect recommendations or policy advice, and not those of a purely factual nature.

After consideration of these various factors, it appears to the court that no single rule can be adopted generically covering discovery requests in these circumstances. The court would make the following observations applicable here, however. First, Metric has made a strong showing, somewhat supported by Severs, that it can put on a *prima facie* case at trial, thus necessitating a more substantive response by defendant. While in other situations the court might be inclined to preserve the disclosure methodology envisioned by 48 C.F.R. § 15.1003, here, plaintiff has more than a colorable argument that it is entitled to relief.

Moreover, while post-award injunctive relief is theoretically as broad as pre-award relief, as a practical matter, the likelihood of obtaining it is reduced. Given Metric's initial showing, the court believes that its obligation to fully exercise its jurisdiction outweighs defendant's otherwise legitimate concerns, particularly in view of the limitations the court will place on disclosure of some documents.

Accordingly, the court concludes that information Metric would routinely receive if it were in the competitive range will be disclosed without limitation. Information within the executive privilege as described herein will not be disclosed; nor will any information relating to other bidders. Information in the evaluation reports, the initial evaluation results briefing, and the competitive range determination (as redacted by the court) will be furnished for review only by counsel of record for Metric, Joseph T. Casey, Jr. The following documents will be reviewed by the court only:

the source selection plan ("SSP"); the evaluation reports worksheets, and the initial evaluation analysis report.

## CONCLUSION

### A. Discovery Order

Based on the above analysis, the court orders production as follows on or before November 4, 1987:[2]

(1) All evaluation reports prepared for Metric's proposal. These reports appear behind Tab A of the documents provided to the court. The reports shall be classified as "protected information" pursuant to the protective order that appears below. In addition, defendant may remove language from the reports that indicates names of evaluators or other bidders and any language that is deliberative—i.e., language that indicates a recommendation or policy advice, as opposed to purely factual statements regarding Metric's proposal.[3]

(2) All of Metric's clarification requests ("CR's") and deficiency reports ("DR's"), as appearing behind Tab B of the documents provided to the court.[4]

(3) Initial evaluation results and competitive range determination briefing to the source selection authority, appearing at Tab C of the documents provided, as redacted by the court. Under separate cover, the court is providing defendant with copies of the specific pages of this document that shall be disclosed. Defendant will provide Metric with a key to interpret the information contained within the evaluations. These documents shall be classified as "protected information" pursuant to the protective order that appears below.

---

2. During oral argument, defendant provided the court with copies of all documents—for *in camera* inspection—sought by plaintiff. All these documents are being returned to defendant under seal for defendant's compliance with this order.

3. The court is returning all of these documents to defendant on the understanding that it will excise those materials falling within the executive privilege. To the extent that the parties dispute application in a particular context, the court is available to review the materials.

4. The court notes that Metric would receive these CR's and DR's if its proposal were determined to be within the competitive range. There is little, if any, prejudice to the procurement process or to other bidders because of the disclosure of these documents.

(4) Competitive range determination, appearing at Tab D of the documents provided to the court. Defendant shall provide plaintiff with an excised version of this document, a copy of which is being provided to defendant under separate cover by the court. Essentially, defendant shall disclose paragraphs 1, 2(e), and 3 (only the first two sentences), as modified by the court. This document shall be classified as "protected information" pursuant to the protective order that appears below.

(5) CR's and DR's for all other bidders, which appear at Tabs E and F of the documents provided to the court, shall not be disclosed. Depending on the nature of the Government's theory of its defense, however, the court reserves the possibility of *in camera* review at a later date.

(6) Funding and estimated pricing portions of the acquisition plan shall not be disclosed.

(7) The source selection plan, evaluation reports worksheets prepared for Metric's proposal, and the initial evaluation analysis report prepared for Metric's proposal shall be provided to the court for *in camera* review. Defendant shall not otherwise disclose these documents.

(8) Depositions—Plaintiff may depose Bruce Giddings, the CO, only as to his reasons for excluding Metric from the competitive range. Plaintiff may depose Lt. Jefferson L. Severs, the technical evaluation team chief, only as to the information provided in his affidavit dated August 26, 1987 prepared for the district court action. Only counsel of record may be present at these depositions and the transcripts shall be placed under seal by the reporter. The deposition testimony shall be classified as "protected information" pursuant to the protective order that appears below.

B. Protective Order

(1) "Protected information" shall be used solely for the purposes of this litigation and shall not be given, shown, made available, discussed, or otherwise communicated in any form to any one other than:

(a) current counsel of record for the plaintiff, his firm and its employees; counsel for the defendant, the Department of Justice and its employees; the Department of the Air Force, including the Sacramento Air Logistics Center, McClellan Air Force Base, and its employees; and the Court and its employees.

(b) It shall be the responsibility of counsel to bring this order to the attention of all persons to whom they disclose protected information and to advise such persons that they are bound by the terms of this order. Persons to whom protected information is made available are bound by the restrictions in this order.

(2) No document (including motions, briefs, depositions, and exhibits) containing protected information shall be filed with the Clerk of the Court unless filed separately under seal in an envelope with a legend on the envelope and document substantially as follows: This envelope/document contains protected information. Disclosure or use of such information is restricted by Court order. This document is filed under seal.

Such documents shall be filed under seal and maintained under seal by the Court. No one other than persons described in subparagraph (a) of paragraph 1 shall have access to such material. Documents designated protected shall be photocopied or otherwise reproduced only if a log identifying the document and number of copies made is contemporaneously provided to the producing party.

(3) Any party may at any time object to the designation of information as protected. Should the designating and objecting parties be unable to resolve the objection informally, the objecting party, through counsel, may submit such dispute to the Court for resolution.

Until the court resolves the dispute, the information shall be treated as protected information.

(4) If any party wishes to disclose protected information to persons other than those referred to in paragraph 1 above, such party shall so inform the producing party, identifying the protected information to be disclosed. If the producing and requesting parties are unable to resolve any objection informally, the requesting party may submit such dispute to the Court for resolution. Until the Court resolves the dispute, the information so produced/designated shall be treated as protected information.

(5) Upon the conclusion of this action (including any and all appeals), counsel for each party and the Clerk in possession of protected information produced or filed by any other party or third party witness shall return all documents, and all copies thereof, containing protected information to the person or party producing it. Legal memoranda and briefs containing such information may be retained if protected information referred to therein is certified by counsel to have been expunged. Any work product documents prepared by counsel may be retained if counsel of record certifies that such documents shall be kept within the possession of private litigant's counsel of record or Governmental entities referenced above and shall not in the future be disclosed.

(6) By providing any document or other information in its possession, neither party waives any privileges, objections, or protections otherwise afforded to it by law or equity.

(7) Any party may, after consultation with opposing counsel, apply to the court for modification of or an exception to this order.

C. Scheduling Order

Based on defendant's oral representation that the Air Force will not award the contract until December 17, 1987, the court orders the following revised trial schedule:

1. The parties are directed to exchange witness and exhibit lists on or before November 16, 1987. The filing requirements of Appendix G, RUSCC are not otherwise applicable.

2. Pretrial briefs shall be due on or before November 18, 1987. Briefs shall not exceed 25 pages in length, not including proposed findings of fact.

3. The pretrial conference will be held November 20, 1987, at 10:00 a.m., in Washington, D.C. Counsel for both parties shall appear in person.

4. Trial on the motion for a preliminary injunction and/or the complaint for declaratory judgment, injunctive relief, and damages will be held in Washington, D.C. on November 30, 1987, commencing at 9:30 a.m.

IT IS SO ORDERED.